182  373
184  604
182      373
211      1614

Commonwealth of Pennsylvania ex rel. the City of Philadelphia Police Pension Fund Association, Appellant, *v.* John M. Walton, City Controller.

*Municipalities—Constitutional law—Article IX., section 7 of the constitution—Police pension fund—Corporation.*

A reasonable appropriation by the councils of a city to a corporation organized to create a fund to pension its members who are policemen is an appropriation to a strictly municipal use, and does not violate sec. 7, article IX. of the constitution which provides that " the general assembly shall not authorize any county, city, borough, township or unincorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual."

*Municipal corporations—Delegation of powers.*

Where city councils are satisfied that a fund appropriated to the members of a corporation will be better distributed through the agency of the corporation than by an agency of their own creation they have a right to so provide.

Argued Jan. 19, 1897. Appeal, No. 534, Jan. T., 1896, by plaintiff, from order of C. P. No. 4, Philadelphia Co., Sept. T., 1895, No. 618, refusing a peremptory writ of mandamus. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for mandamus.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order refusing peremptory writ of mandamus.

*George Wharton Pepper* and *John G. Johnson,* for appellant. —It cannot be successfully contended that an appropriation by the councils of a municipal corporation for the creation or maintenance of a police pension fund is not an appropriation to a municipal use. There is nothing in which the municipality as a whole is more interested than in the faithful and effective discharge of duty by public servants. A pension fund judiciously administered is a potent agency in securing service of the highest order.

The court has distinctly recognized the principles here contended for by deciding that the payment of a bounty in time of war to each volunteer from a given county is a payment of money to municipal use, and that a municipal corporation might appropriate its funds to such a use even had the legislature not assumed to authorize municipalities : Speer v. School Directors of Blairsville, 50 Pa. 150.

Councils had discretionary power to pass the ordinance : Tagg v. Philadelphia, 18 W. N. C. 79; Tatham v. Philadelphia, 2 W. N. C. 564; Morton v. Philadelphia, 4 Dist. Rep. 524; Com. ex rel. v. Philadelphia, 176 Pa. 588.

Section 7, article IX. of the constitution of Pennsylvania does not apply : Speer v. School Directors, 50 Pa. 162; In re Northern Home for Friendless Children, 2 W. N. C. 349; Sharpless v. Phila., 21 Pa. 147; Penna. R. Co. v. Phila., 47 Pa. 189; Wilkes-Barre City Hospital v. Luzerne County, 84 Pa. 55; Earley's App., 103 Pa. 273; Indiana County v. Agricultural Society, 85 Pa. 357.

*James Alcorn*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee.—In cases referred to by appellant—Tagg v. City of Philadelphia, 18 W. N. C. 79, Tatham v. Philadelphia, 2 W. N. C. 564, and Morton et al. v. Philadelphia, 4 Dist. Rep. 524, the appropriation or expenditure of the money was made directly by the city councils or the clerks thereof. They were not cases of appropriations for the benefit of a private corporation.

In Pennsylvania R. R. Co. v. City of Philadelphia, 47 Pa. 189, it was held that an ordinance authorizing the retention of a part of the dividends due to the city on the stock of the Pennsylvania Railroad Company held by it, for the purpose of aiding in the establishment of an ocean steamship company, was void and in violation of the constitutional amendment of 1857 : Wheeler v. Phila., 77 Pa. 338.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 11, 1897 :
In the relator's petition for the alternative writ, it avers among other things that it is a corporation, created by and existing under the laws of this state, whose objects as defined by its charter are to accumulate a fund from the dues of its

members, from legacies, bequests, gifts and other sources, with which to pay pensions to members of the association and to families of deceased members; that its membership is twenty-three hundred and eighty-six (2386), including the director of public safety, the superintendent of police, all the police captains and lieutenants, two hundred and thirty-six (236) sergeants, two thousand and thirteen (2013) patrolmen, sixty-seven (67) patrol and van drivers and thirty (30) employees of the electric bureau; that it pays pensions to members who have become permanently incapacitated by reason of injuries received in the performance of actual duty, to members who have served fifteen years, whatever may be the cause of incapacity (excepting cases in which it results from the member's own vicious habits), to members who have served twenty-five years, and to the widow or children or dependent parents of a member killed in the discharge of his duty, etc.; that in 1895 an ordinance was passed by the councils of said city of Philadelphia and approved by the mayor appropriating ten thousand ($10,000) dollars for the charter purposes of said Pension Fund Association; that in January of that year a warrant for the payment of said sum was duly drawn by the director of the department of public safety and presented to the then city controller, who refused to countersign the same; that his successor in office,— the present controller,—being unwilling to overrule the decision of his predecessor, declined to countersign the warrant; and praying that an alternative mandamus issue, etc.

In the city controller's return to the alternative writ all the facts recited in the petition are virtually admitted. The only reason he gives for his refusal to countersign the warrant is that the appropriation was to an association or corporation; and is in violation of law and of section 7 of article IX. of the constitution which reads thus: "The general assembly shall not authorize any county, city, borough, township or unincorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for or to loan its credit to any corporation, association, institution or individual."

In support of the demurrer to this return the following reasons were assigned: (1) the return admits facts which show that the relator is entitled to relief; (2) it discloses no legal ground for refusal to countersign the warrant, and (3) the

respondent has neither set up nor offered any matter or thing to defeat the right of the relator as disclosed by its petition.

The refusal of the court below to sustain the demurrer, and the entry of judgment thereon for the defendant, constitute the subjects of complaint in this appeal.

It is unnecessary to even outline the history of the constitutional prohibition above quoted. It had its origin in the amendment of 1857, which was prompted by the growing evils of reckless and extravagant municipal subscriptions to railroads, plank roads, etc. Those evils were so aggravated that it became necessary to interfere and prevent by a constitutional prohibition all future pledges of municipal faith and property for such purposes under the sanction of the legislature, which alone possessed the power to grant the proper authority : Railroad v. Philadelphia, 47 Pa. 193; Speer v. School Directors, 50 Pa. 163; Brooke v. Philadelphia, 162 Pa. 126.

In Speer v. School Directors, supra, it was held " that money paid to save a community from a (military) draft is not obtained for a party or individual, but is a direct appropriation to a public purpose, and that raising money by the ordinary powers of borrowing and taxation for a common purpose, affecting the interest, happiness and welfare of a community, is not obtaining money or loaning credit to any party within the terms of the amendment."

It is evident from an examination of our cases on the subject, that no strictly legitimate municipal purpose was intended to be prohibited. The evident purpose of the prohibition was to confine municipalities to the objects for which they were created and to restrain the legislature from authorizing any perversion of them. By the act of March 17, 1789, which appears to be still in force, the city councils of Philadelphia " have full power and authority to make, ordain and establish such and so many laws, ordinances and regulations as shall be necessary for the welfare and comfort of the city." We have no right to assume, nor is there anything from which it may be fairly inferred that the constitutional prohibition in question was intended to revoke or curtail any of the powers or authorities with which the city councils were theretofore invested by the comprehensive grant above quoted. It is not even suggested that a reasonable appropriation by councils for the creation or maintenance of a police pension fund is not an ap-

propriation to a strictly municipal use, and "necessary for the welfare and comfort of the city." A judiciously administered pension fund is doubtless a potent agency in securing and retaining the services of the most faithful and efficient class of men connected with that arm of the municipal service in which every property owner and resident of the city is most vitally interested. Reasons in support of this proposition need not be stated in detail. They are such as readily suggest themselves to every reflecting mind.

But, aside from the general charter authority of councils to make such appropriations, and aside from any question of expediency or propriety in their doing so, this case might well be disposed of on the ground that the constitutional prohibition relied on by the defendant is inapplicable to councils. In Indiana Co. v. Agricultural Society, 85 Pa. 357, this court held that the section in question "deals only with legislative power. . . . . That power is thereby limited and restricted. It declares what the legislature 'shall not' do. It annuls nothing that it had done. It forbids such legislation thereafter. It struck down no law. Its prohibitions were wholly prospective." It is not pretended that the ordinance in question was enacted in pursuance of any legislation passed since the adoption of the constitutional prohibition. It therefore follows that the latter has no application here.

There is no merit in the objection that councils delegated the distribution of the sum appropriated to the "Philadelphia Police Pension Fund Association," instead of distributing it themselves. If they were satisfied, as they doubtless were, that the distribution of the fund would be better effected through the agency of the association than by an agency of their own creation, they had a right to so provide. As we have seen, the association was incorporated for the express purpose of administering such funds on just and equitable principles. If it should attempt to divert any of the funds to improper purposes ample redress could be had by application to the proper court.

It follows from what has been said that the demurrer should have been sustained, and a peremptory writ awarded as prayed for.

Judgment reversed, and judgment is now entered in favor of the plaintiff on the demurrer, and peremptory writ awarded as prayed for.